**FOR PUBLICATION**

```
         IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. THOMAS & ST. JOHN

AUDRA RICHARDS,                  )
                                 )
         Plaintiff,              )
                                 )
     v.                          )    Civil No. 2006-237
                                 )
LEGISLATURE OF THE VIRGIN        )
ISLANDS; USIE RICHARDS, in his   )
official capacity; and USIE      )
RICHARDS in his personal         )
capacity,                        )
                                 )
         Defendants.             )
_____)
```

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
St. Thomas, U.S.V.I.
  *For the plaintiff.*

**Claudette V. Ferron, Esq.**
St. Thomas, U.S.V.I.
  *For defendants Legislature of the Virgin Islands and*
  *Usie Richards, in his official capacity only.*

**Emile A. Henderson, III, Esq.**
St. Croix, U.S.V.I.
  *For defendant Usie Richards, in his personal capacity*
  *only.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

  Before the Court is the motion of the defendants, the Legislature of the Virgin Islands (the "Legislature") and Usie Richards, in his official capacity only ("Senator Richards"), for partial summary judgment against the plaintiff, Audra Richards

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 2

(the "Plaintiff").

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff is a former employee of the Legislature. She began work there in January 2003 as a project coordinator for Senators Luther Renee and Ronald Russell. She alleges that Senator Richards, for whom she did not work directly, sexually harassed her. She also alleges general workplace hostility. She claims to have been terminated without justification despite her purportedly exemplary job performance.

The Plaintiff commenced this action in December 2006 against the Legislature and Senator Richards, in both his official and personal capacities (together, the "Defendants").[1] She asserts the following sixteen causes of action: (1) a Title VII sexual harassment claim; (2) a Title VII retaliation claim; (3) a Title VII disparate treatment claim; (4) an Equal Pay Act claim; (5) a 42 U.S.C. § 1983 claim based on alleged due process and equal protection violations; (6) a 42 U.S.C. § 1985 claim based on an alleged conspiracy to violate civil rights; (7) a civil conspiracy claim; (8) a negligent retention claim; (9) an assault claim; (10) a battery claim; (11) a false imprisonment claim; (12) a prima facie tort claim; (13) an intentional infliction of

---

[1] The Court refers to the Legislature and Senator Richards, in his official capacity only, as the Defendants for the sake of simplicity. The Court recognizes that the motion is not brought by Senator Richards in his personal capacity.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 3

emotional distress claim; (14) a breach of contract claim; (15) a claim for breach of the duty of food faith; and (16) a claim for public policy violations.

Senator Richards, in his personal capacity, has filed a counterclaim against the Plaintiff, alleging that she filed a false police report against him.

The Defendants now seek summary judgment on the Plaintiff's Title VII sexual harassment claim, Title VII disparate treatment claim, Equal Pay Act claim and false imprisonment claim. The Plaintiff has filed an untimely opposition.[2]

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

---

[2] The Defendants filed their motion on December 19, 2008. The Plaintiff's opposition was due no later than January 8, 2009. *See* LRCi 56.1(b) (2008). The Plaintiff failed to file her opposition by that date. Instead, on January 9, 2009, the Plaintiff filed a document entitled "Notice of Extension of Time for Plaintiff to Respond to Defendants' Motion for Partial Summary Judgment," which purported to allow the Plaintiff to file her opposition by January 26, 2009. The Plaintiff again failed to file her opposition by that purported deadline. Instead, on that date, she filed a motion for an extension of time, and filed her opposition on January 27, 2009. As such, her opposition is untimely.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 4

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

The Plaintiff has asserted a Title VII retaliation claim in Count Two of her verified complaint against the Legislature and Senator Richards in his official and personal capacities. In that count, she alleges that the Defendants terminated her employment after she filed a complaint with the Legislature

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 5

regarding Senator Richards' alleged sexual advances on her and general workplace hostility.

To prevail on a claim for retaliation under Title VII, an employee must make a *prima facie* showing that "(1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity." *Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001)). "If the employee establishes this *prima facie* case of retaliation, . . . the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (quotation marks omitted; citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 6

    It is undisputed that the Plaintiff engaged in a protected employment activity by complaining of harassment.[3] The first element of the Plaintiff's retaliation claim is therefore satisfied. *See*, *e.g.*, *Dooley v. Roche Lab, Inc.*, 275 Fed. Appx. 162, 163-64 (3d Cir. 2008) (unpublished) (finding the first element "clearly satisfied" where the plaintiff filed a complaint against her employer, alleging unlawful retaliation).

    The second element of the Plaintiff's retaliation claim is likewise satisfied. The Plaintiff claims that her employment contract was not renewed. It is well-settled that "[t]he failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII[.]" *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 320 (3d Cir. 2008); *see also Kassaye v. Bryant College*, 999 F.2d 603, 607 (1st Cir. 1993) (stating that the refusal to renew an employment contract may

---

    [3] Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or *because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding*, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis supplied).

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 7

give rise to a Title VII claim); *Mateu-Anderegg v. Sch. Dist. Of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir. 2002) (concluding that "it is undisputed that [the plaintiff] . . . suffered an adverse employment action" because of the non-renewal of an employment contract).[4]

This case, like many Title VII retaliation cases, pivots on the third element: causation.

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). The Court may consider "'a broad array of evidence' in determining whether a sufficient causal link exists to survive a motion for summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d

---

[4] The Defendants dispute that any adverse action was taken against the Plaintiff. They assert, without citation to any relevant authority, that the non-renewal of an employment contract does not constitute adverse employment action for Title VII purposes. That assertion is unsupported by law.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 8

217, 232 (3d Cir. 2007) (quoting *Farrell*, 206 F.3d at 284), *cert. denied*, 128 S. Ct. 2053 (2008). "Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment." *Id.* (quotation marks and citations omitted).

Here, the Plaintiff reported Senator Richards' alleged harassment on September 20, 2004. Thereafter, the Legislature convened a committee to investigate the complaints of the Plaintiff and those of other women employees of the Legislature. That committee took testimony in November 2004 and issued a report in December 2004 reprimanding Senator Richards. The Plaintiff's two-year period of employment ran from January 13, 2003 to January 10, 2005. Thus, approximately two months elapsed between the Plaintiff's protected conduct and the alleged adverse employment action taken against her. That length of time, standing alone, is insufficient to be "unusually suggestive" of a causal link. *See, e.g.*, *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that two months was not "unusually suggestive"); *cf. Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. 2008) (finding three days sufficient), *cert. denied sub nom. N.Y. Law Publ. Co. v. Doe*, 129 S. Ct. 576 (2008).

Although the timing of the Plaintiff's protected conduct and the non-renewal of her contract is inadequate on its own to show causation, the Plaintiff may still couple that timing with some evidence of a pattern of antagonism to create a genuine question of material fact regarding causation.[5] See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 481 (7th Cir. 1995) ("[T]he timing of [a] non-renewal decision, in combination with . . . other facts . . ., may be enough to create a genuine issue of material fact regarding the causal link between [a] complaint and . . . non-renewal.").

To meet her burden, the Plaintiff asserts that at one legislative session, at which all senators and staffers were supposedly present, Senator Richards stood at the podium, looked at the Plaintiff and complained aloud about "political whores" in the room. The Plaintiff also recounts that her husband and she, while dining at a restaurant one evening at some point after the filing of her complaint, were approached by the dining companion of another senator. According to the Plaintiff, that senator's companion tried to instigate a fight with the Plaintiff's husband. The following week, while at work, that senator contacted the Plaintiff and grew angry with her when the

---

[5] Apparently convinced that she could rely exclusively on the temporal closeness between her complaint and the non-renewal of her employment contract, the Plaintiff has not explicitly attempted to demonstrate a pattern of antagonism.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 10

Plaintiff inquired about the senator's involvement in the would-be altercation. Finally, the Plaintiff alleges that, on reporting to work in January 2005, she found the door to her office locked and thereafter received a notice of dismissal.

After an exhaustive review of the record, the Court is unable to discern any other allegations arising out of the aftermath of the Plaintiff's filing of her complaint that could create an inference that there was a pattern of antagonism. Significantly, taken together, the Plaintiff's allegations -- which really amount to two isolated incidents, one of which did not even occur at work and did not implicate anyone involved in the Plaintiff's terms of employment -- do not rise to the level of a pattern of antagonism recognized in this circuit as sufficient *prima facie* evidence of retaliation.[6] *See*, *e.g.*, *Martinez v. Rapidigm, Inc.*, 290 Fed. Appx. 521, 527 (3d Cir.

---

[6] Furthermore, it is undisputed that the Plaintiff was a contract employee working under the supervision of Senators Luther Renee and Ronald Russell. It is also undisputed that the Plaintiff was not under the supervision of Senator Richards. That fact blunts the effect of his remark about "political whores" because it was a "stray" remark. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1993) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.") (citations omitted); *see also Edwards v. Pa. Tpk. Comm'n*, 80 Fed. Appx. 261, 264 (3d Cir. Pa. 2003) (unpublished) ("The remarks were made by supervisors unrelated to the decision to terminate Edwards and the remarks were also temporally remote from the date of the decision. Therefore they were 'stray' remarks and not given great weight.").

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 11

2008) (unpublished) ("[T]he 'pattern of antagonism' that [the plaintiff] alleges, which essentially amounts to petty intra-office squabbles, does not amount to the type of antagonism we have recognized."); *cf. Hare v. Potter*, 220 Fed. Appx. 120, 129 (3d Cir. 2007) (unpublished) (finding *prima facie* evidence of retaliation where the plaintiff adduced evidence that, among other things, the employer "expressly threatened to retaliate against her if she pursued her claim"); *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178-79 (3d Cir. 1997) (finding that an employer's direct statements that the plaintiff was no longer on the management track because of her complaints about salary and campaigning on women's issues, would permit a factfinder to conclude that the plaintiff's protected conduct was the cause of the employer's adverse action); *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (concluding that a pattern of antagonism existed where the employer engaged in a "constant barrage of written and verbal warnings . . ., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge").

As noted above, temporal proximity and a pattern of antagonism are not the sole avenues to establish causation. A plaintiff may proffer evidence that, viewed as a whole, raises an inference of retaliation. The Court has intensively reviewed the

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 12

entire record and concludes that Richards has failed to do so.[7]

Accordingly, the Court will grant the motion with respect to Count Two.

Count Three asserts a disparate treatment claim under Title VII against the Legislature. In that count, the Plaintiff

---

[7] Even if the Plaintiff succeeded in making out a *prima facie* case of discrimination, the burden would then shift to the Defendants to present a legitimate, non-retaliatory reason for the non-renewal of the Plaintiff's employment contract. The Defendants have done so. They have provided shown that the Plaintiff's contract was scheduled, from the very beginning of her employment term, to terminate on January 10, 2005. They also have shown that one of the senators for whom the Plaintiff worked was not reelected. Given this legitimate reason, the burden would shift back to the Plaintiff to create an inference that the Defendants' reason for the non-renewal of her contract is false or pretextual. The Plaintiff has not done so.

The Plaintiff asserts that it was customary for a legislative staffer to be reassigned to another senator in the event the senator for whom that staffer initially worked was not reelected. The Plaintiff claims that it was her understanding that she would also be reassigned after January 10, 2005. That understanding notwithstanding, the record shows conclusively that the Plaintiff's employment term began on January 13, 2003 and was scheduled to end on January 10, 2005. The Plaintiff does not contend that she was unaware of that fact when she was hired. In any event, she has adduced no evidence whatever that reassigning the staffers of outgoing senators to other senators' offices was a policy of the Legislature, that similarly situated employees were beneficiaries of that policy and that the Plaintiff was prohibited from availing herself of that policy. *See Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) ("In the absence of evidence that the comparators were actually similarly situated to him, an inference of falsity or discrimination is not reasonable.") (quotation marks and citations omitted); *see also, e.g., McGill v. Munoz*, 203 F.3d 843, 848 (D.C. Cir. 2000) (holding that the plaintiff provided no evidence of pretext where she "offered no evidence that employees with similarly suspicious patterns of absenteeism were treated any differently than she was").

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 13

alleges that she is female, had a fine track record at work and was treated less favorably than similarly situated males.

"Disparate treatment discrimination is proven by either using direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate." *Doe*, 527 F.3d at 364. The employee must first make a *prima facie* case of disparate treatment. *Id.* A plaintiff alleging a Title VII disparate claim must "offer sufficient evidence that she was: (1) a member of the protected class, (2) qualified for the position she sought, and (3) nonmembers of the protected class were treated more favorably." *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993)). "[T]he elements of that *prima facie* case must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). If the employee succeeds in making out a *prima facie* case, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision." *Doe*, 527 F.3d at 364. "If the employer is able to do so, the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination." *Id.*

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 14

It is undisputed that the Plaintiff, as a woman, is a member of a protected class. *See Doe*, 527 F.3d at 364 ("Title VII prohibits employment discrimination based on an individual's sex."). There is likewise no dispute that the Plaintiff was qualified for her job. The viability of the Plaintiff's disparate treat claim therefore turns, at least in the first instance, on the third element of the inquiry.

Neither in her verified complaint nor in the three short paragraphs she dedicates to her disparate treatment claim in her opposition papers does the Plaintiff even allege, much less demonstrate, that she was treated differently from similarly situated men. Instead, she alleges that the "Legislature took no action to remove . . . male members and employees or protect . . . female employees. (Verified Compl. ¶ 65.) Significantly, that allegation suggests that the Plaintiff's real grievance derives from the Legislature's purported failure to discharge offensive male colleagues, not its disparate treatment of male and female employees. The Plaintiff concedes that disparate treatment ordinarily is shown by comparison to similarly situated male employees. She claims, however, and without citation to any authority whatever, that another means of demonstrating disparate treatment is by showing that "the harassers are permitted to remain in the workplace, blameless and uncensured, while the

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 15

person harassed is terminated." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Partial Summ. J. at 8.)

Even assuming the Plaintiff's reading of the law is accurate -- which the Court seriously doubts -- the Plaintiff has failed to make out a *prima facie* case of disparate treatment. Her failure to point to a single male employee who was in a position similar to hers and who was treated more favorably than she, is fatal to her disparate treatment claim.[8] *See*, *e.g.*, *Thomas v. Compuware Corp.*, 105 Fed. Appx. 60, 65 (6th Cir. 2004) (affirming summary judgment for the employer where the plaintiff "points to no similarly situated individuals -- that is, individuals who were performing the same basic job and had received similarly unsatisfactory performance appraisals -- to whose salary calculations she could compare her own"); *Kidd v. MBNA Am. Bank, N.A.*, 93 Fed. Appx. 399, 401 (3d Cir. 2004) (unpublished) (concluding that the plaintiff "failed to provide any evidence that similarly situated persons not in a protected class were treated more favorably in any of her other denials of promotion"); *cf. Williams v. URS Corp.*, 124 Fed. Appx. 97, 100-01

---

[8] In her opposition, the Plaintiff seems to suggest that she was treated less favorably than Senator Richards, who was not discharged from his position notwithstanding his alleged misconduct. To the extent the Plaintiff seeks to use Senator Richards as a comparator, the Court has little doubt that a legislative staffer with a fixed-term contract is not similarly situated -- in any sense of the phrase -- to an elected official of the legislative body in which that staffer works.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 16

(3d Cir. 2005) (unpublished) (finding a *prima facie* case where the plaintiff provided evidence that every other employee in her office "received a salary within the range established for that employee's pay grade" while the plaintiff's salary fell below the range for her grade). Accordingly, the Court will grant the Defendants' motion with respect to Count Three.

In Count Four, the Plaintiff alleges an equal pay violation against the Legislature. In her opposition, the Plaintiff states that she no longer wishes to pursue the theory of relief asserted in Count Four and will stipulate to the dismissal of that count. Given this circumstance, the Court will grant the Defendants' motion with respect to Count Four.

In Count Eleven, the Plaintiff asserts a false imprisonment claim against Senator Richards in his official and personal capacities. She alleges that Senator Richards isolated her and prevented her from escaping his sexual advances without her consent.

To prevail on her false imprisonment claim, the Plaintiff must show that: (1) Senator Richards intended to confine her within boundaries he himself fixed; (2) Senator Richards' actions directly or indirectly resulted in her confinement; and (3) the Plaintiff was conscious of the confinement or was harmed by it.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 17

Restatement (Second) of Torts § 35 (1965).[9]  For liability to attach to Senator Richards, the Plaintiff's alleged confinement must have been complete. *Id.* § 36(1).  The tort of false imprisonment "is complete with even a brief restraint of the plaintiff's freedom[.]" *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004) (quotation marks and citation omitted).

The Defendants contend that they are entitled to summary judgment on the Plaintiff's false imprisonment claim because, in their view, the Plaintiff has not and cannot adduce any evidence that Senator Richards actually confined or isolated her.  They rely on the allegations of the Plaintiff's verified complaint. According to one such allegation, "while Plaintiff was standing near her office door, Senator Richards pushed his body against Plaintiff's and tried to kiss her on the lips.  Plaintiff pushed him off and ran up the stairs." (Verified Compl. ¶¶ 23-24.)  The Defendants spotlight this allegation to support their contention that the interactions with Senator Richards about which the Plaintiff complains, even assuming they occurred, were too fleeting to sustain a false imprisonment claim.

To the extent the Defendants seek to meet their burden by arguing that the Plaintiff's alleged confinement was too short-lived, the Defendants come up short.  The Restatement does not

---

[9]  In the absence of local law to the contrary, the Restatements of Law are the law of the Virgin Islands. V.I. CODE ANN. tit. 1, § 4.

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 18

specify a durational threshold for confinement. Other jurisdictions make clear that any confinement, no matter its duration, suffices for false imprisonment purposes. *See*, *e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 486 n.15 (9th Cir. Cal. 2007) ("False imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.") (stating California law; quotation marks and citation omitted); *Kelly v. Curtis*, 21 F.3d 1544, 1556 (11th Cir. 1994) ("[F]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty.") (stating Georgia law; quotation marks and citation omitted); *Lolley v. Charter Woods Hosp., Inc.*, 572 So. 2d 1223, 1225 (Ala. 1990) ("[F]alse imprisonment is defined as the unlawful detention of the person of another for any length of time whereby that person is deprived of his or her liberty.") (quotation marks and citation omitted).

    The Defendants offer no other basis on which to grant them summary judgment on the Plaintiff's false imprisonment claim. Based on the Plaintiff's allegations, which are buttressed by competent evidence[10], that Senator Richards obstructed her

---

    [10] For summary judgment purposes, a verified complaint may be treated as the equivalent of an affidavit. *See*, *e.g.*, *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating a verified complaint as an affidavit in reviewing a ruling on a summary judgment motion); *see also Hernandez v. Velasquez*, 522 F.3d 556,

*Richards v. Legislature of the V.I., et al.*
Civil No. 2006-237
Memorandum Opinion
Page 19

passage and interfered with her freedom, even if only momentarily, the Court finds that summary judgment is inappropriate. *See Broughton v. Kellog*, 335 N.E.2d 310, 314 (N.Y. 1975) ("[W]henever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference."). Accordingly, the Court will deny the motion with respect to Count Eleven.

## IV. CONCLUSION

For the reasons given above, the Defendants' motion for partial summary judgment will be granted in part and denied in part. An appropriate order follows.

S_____
    CURTIS V. GÓMEZ
      Chief Judge

---

561 (5th Cir. 2008) ("[T]he allegations in [a] verified complaint may be considered competent evidence insofar as they comply with the requirements of Federal Rule of Civil Procedure 56(e)."). The Plaintiff's verified complaint satisfies the requirements of Rule 56(e).